IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 150, AFL-CIO, | ) ) ) ) | |
| | ) | Case No. 08 C 6053 |
| Plaintiff / Counter-Defendant, v. | ) ) ) | Judge Virginia M. Kendall |
| | ) | |
| SAM J. CHELLINO CRANE RENTAL, INC., | ) ) ) | |
| | ) | |
| Defendant / Counter-Plaintiff. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff International Union of Operating Engineers, Local 150, AFL-CIO ("Local 150") filed this suit seeking to enforce seven Joint Grievance Committee ("JGC") arbitration awards against Defendant Chellino Crane Rental, Inc. ("Chellino") and to vacate an award entered by the National Maintenance Agreement Policy Committee ("NMAPC") against Local 150 pursuant to the National Maintenance Agreement ("NMA"). Chellino filed a counterclaim seeking to enforce the NMAPC award and vacate the seven JGC awards. Local 150 moves for summary judgment on its Complaint and on the remainder of Chellino's Counterclaim. Chellino cross-moves for summary judgment on its Counterclaim. For the reasons set forth herein, Local 150's Motion for Summary Judgment is granted in its entirety, and Chellino's Motion for Summary Judgment is denied in its entirety.

# STATEMENT OF FACTS[1]

## I. The Parties

Local 150 is a labor organization representing employees in industries affecting commerce, including crane operators located in northern Illinois, northwest Indiana, and eastern Iowa. (Chellino 56.1 Resp. ¶ 2; Local 150 56.1 Resp. ¶ 1.) Local 150's principal offices are located in Countryside, Illinois. (Local 150 56.1 Resp. ¶ 2.) James Sweeney ("Sweeney") has been Local 150's President and Business Manager since July of 2008. (Chellino 56.1 Resp. ¶ 3.)

Chellino, an Illinois corporation, has offices in Joliet, Illinois ("Joliet") and operates throughout Local 150's geographic area. (Chellino 56.1 Resp. ¶ 4; Local 150 56.1 Resp. ¶ 3.) Chellino provides crane rental services to business entities including the Exxon Mobil Refinery (the "Refinery") in Joliet. (Chellino 56.1 Resp. ¶ 4.) Greg Chellino has served as Chellino's President for the past ten years. (Chellino 56.1 Resp. ¶ 4.)

## II. The Illinois Building Agreement

Chellino became a signatory to the Mid-America Regional Bargaining Association ("MARBA") Districts 1-2-3 Illinois Building Agreement ("IBA") on or about May 8, 1996. (Chellino 56.1 Resp. ¶ 5; Local 150 56.1 Resp. ¶ 19.) The 2007-2010 IBA was in effect from June 1, 2007 through May 31, 2010 and covered the Illinois counties of Will, Cook, and DuPage.

---

[1] Throughout this Opinion, the Court refers to the Parties' Local Rule 56.1 Statements of Undisputed Material Facts as follows: citations to Chellino's Response to Local 150's Local Rule 56.1 Statement have been abbreviated to "Chellino 56.1 Resp. ¶ ___"; citations to Local 150's Response to Chellino's Local Rule 56.1 Statement have been abbreviated to "Local 150 56.1 Resp. ¶ ___"; citations for Chellino's Response to Local 150's Local Rule 56.1 Statement of Additional Facts have been abbreviated to "Chellino 56.1 Add'l Resp. ¶ ___". The parties' overlapping Motions for Summary Judgment presented many of the same facts to the Court; the Court has not cited every location in the record where a particular fact may have been admitted but has considered the entirety of the factual statements submitted by both parties.

(Chellino 56.1 Resp. ¶ 6.) A previous IBA, the 2000-2007 IBA, had been in effect from June 1, 2000 through May 31, 2007.[2] (Chellino 56.1 Resp. ¶ 7.)

Both the 2001-2007 and 2007-2010 IBAs set forth a procedure governing grievances that arise concerning the IBA's interpretation or application. (Chellino 56.1 Resp. ¶¶ 10-11.) The procedure has four steps, culminating in arbitration. (Chellino 56.1 Add'l Resp. ¶ 5.) Under the procedure, disputes that cannot be resolved by a first-level conference between union and employer representatives are referred to a second-level formal conference panel. (Chellino 56.1 Resp. ¶¶ 11-12.) If the grievance remains unresolved, a Joint Grievance Committee ("JGC") comprising an equal number of union and employer members has the authority to resolve the grievance by majority vote. (Chellino 56.1 Resp. ¶ 13.) The IBA further provides that liquidated damages must be paid on any grievance award entered by the JGC that is not paid within seven days of the date of the award, as well as attorneys' fees for award-enforcement actions. (Chellino 56.1 Resp. ¶ 55.)

With respect to the substance of the dispute between the parties here, both the 2001-2007 and the 2007-2010 IBAs provided that an employer-signatory was to employ a Craft Foreman when eight or more bargaining-unit members are employed on any one shift at any one project, or at each yard or shop from which eight or more bargaining-unit members receive work assignments. (Chellino 56.1 Resp. ¶¶ 18, 21.) One or more Assistant Craft Foremen were to be employed on any shift where there are more than thirty bargaining unit members employed. (Chellino 56.1 Resp. ¶¶ 18, 21.) The Craft Foreman was responsible for general day-to-day supervision of employees and machinery, but did not have authority to "exercise any of the functions customarily exercised by supervisors within

---

[2] The parties completed briefing on their Motions for Summary Judgment prior to the expiration of this IBA; neither party has provided the Court with any information regarding the currently-effective IBA or any reason to believe that the provisions of such agreement would be relevant to the dispute at issue here.

the meaning of the National Labor Relations Act . . . ." (Chellino 56.1 Resp. ¶¶ 20, 23.) The 2001-2007 IBA provided that the Craft Foreman and Assistant Craft Foreman positions were to be filled by mutual agreement of the union and employer, unless the selected employee had worked for the employer for more than ten years. (Chellino 56.1 Resp. ¶ 22.) The 2007-2010 IBA, however, provided that the two positions were to be filed by mutual agreement in all cases, with no exceptions. (Chellino 56.1 Resp. ¶ 19.)

## III. The National Maintenance Agreement

The NMA is a national agreement applicable to maintenance, repair, replacement, and renovation work that is primarily within the recognized and traditional work jurisdiction of a signatory union. (Chellino 56.1 Resp. ¶ 8; Local 150 56.1 Resp. ¶ 14.) The NMA is administered by the NMAPC, which is headquartered in Virginia. (Local 150 56.1 Resp. ¶ 6.) Chellino and the International Union of Operating Engineers, AFL-CIO, are signatories to the NMA for, among other activities, work that Chellino performs at the Joliet Refinery. (Chellino 56.1 Resp. ¶ 9.)

The NMA states that it "is a stand-alone Agreement and none of the provisions in any local, regional/area or national collective bargaining agreement shall apply, unless specifically incorporated in this Agreement." (Local 150 56.1 Resp. ¶ 16.) With respect to foremen, the NMA provides that "[t]he designation, appointment and determination of the number of foremen and/or general foremen is the sole responsibility of the Employer." (Local 150 56.1 Resp. ¶ 15.) The NMA also states that employers are to "hire craftworkers in any territory where work is being performed . . . in accordance with the hiring procedure existing in the territory . . . ." (Local 150 56.1 Resp. ¶ 14; Chellino 56.1 Add'l Resp. ¶ 20.)

The NMA provides for a five-step grievance procedure, with provisions for jobsite negotiations, for NMAPC adjudication, and for arbitration in the event that the NMAPC is unable to reach a decision. (Local 150 56.1 Resp. ¶ 16.) "Jurisdictional disputes" are to be resolved by negotiations between union and employer or by a Permanent Umpire designated by the NMAPC. (Local 150 56.1 Resp. ¶ 18.)

**IV. The Craft Foreman Dispute Between Chellino and Local 150**

As described above, the 2001-2007 IBA allowed Chellino to unilaterally appoint Craft Foremen and Assistant Craft Foremen who had worked for Chellino for more than ten years. On several occasions during the applicability of this IBA, Chellino unilaterally appointed individuals who met this criterion to serve as Craft Foreman and Assistant Craft Foremen for Chellino projects at the Refinery and elsewhere. (Chellino 56.1 Resp. ¶¶ 38-41.)

The new IBA, which went into effect on June 7, 2007, required mutual selection of Craft Foremen and Assistant Craft Foremen in all cases. In August 2007, Greg Chellino and Local 150 mutually agreed upon the selection of Pete Metesh ("Metesh") as a Craft Foreman for the ExxonMobil Refinery. (Chellino 56.1 Resp. ¶ 29.) Dean Rankovich ("Rankovich") acted as Local 150's agent in the selection process. (Chellino 56.1 Resp. ¶ 29.) In January 2008, Rankovich named Dave Gerdez ("Gerdez") as an Assistant Craft Foreman, apparently without input from Greg Chellino, who was on vacation. (Chellino 56.1 Resp. ¶ 30.) Shortly thereafter, Metesh ended his employment with Chellino, and Local 150 recommended David Papesh ("Papesh") as a new Craft Foreman for the Refinery site. (Chellino 56.1 Resp. ¶ 32.) Greg Chellino, however, sought to appoint Tom Giarrante ("Giarrante") to the position. (Chellino 56.1 Resp. ¶ 33.) After negotiations, Chellino and Local 150 mutually agreed that Gerdez would be promoted to the Craft Foreman

5

position and that Papesh would be the Assistant Craft Foreman. (Chellino 56.1 Resp. ¶ 33.) Metesh, Gerdez, and Papesh were all paid according to IBA pay scales during their terms as Craft Foremen and Assistant Craft Foremen. (Chellino 56.1 Resp. ¶ 34.) Additionally, they were expected to fulfill the duties of their respective positions as defined by the IBA. (Chellino 56.1 Resp. ¶ 34.)

In September 2007, Chellino unilaterally, without input from Local 150, hired Charlie Novak ("Novak") to serve as a general foreman for the Refinery project. (Chellino 56.1 Resp. ¶ 30.) Novak had general supervisory powers over Chellino's employees at the Refinery, including union Craft and Assistant Craft Foremen. (Chellino 56.1 Resp. ¶ 30.)

On March 12, 2008, Chellino terminated Gerdez and Papesh from their positions as Craft Foreman and Assistant Craft Foreman, respectively,[3] and replaced them with Giarrante in the Craft Foreman position and Benjamin Stenemeyer ("Stenemeyer") in the Assistant Craft Foreman position. (Chellino 56.1 Resp. ¶ 35; Local 150 56.1 Resp. ¶¶ 22-24.) Both Giarrante and Stenemeyer were Chellino employees who already worked at the Refinery. (Chellino 56.1 Resp. ¶ 35.) Giarrante had worked for Chellino for more than ten years and had previously been appointed as an Assistant Craft Foreman on a Chellino project in accordance with the unilateral-appointment provision of the previous IBA. (Chellino 56.1 Resp. ¶ 40.)

On June 3, 2008, Greg Chellino contacted Rankovich and informed him that Chellino required a Craft Foreman for its second shift at the Refinery. Rankovich suggested that Metesh be appointed; Greg Chellino, however, suggested that George Aimone be named Craft Foreman for the

---

[3] Local 150's Rule 56.1 Statement on this point, which Chellino did not dispute, mistakenly reverses the positions held by Gerdez and Papesh. It is clear from Chellino's Local Rule 56.1 Statement, from the chronology described above, and from the deposition testimony of Chellino's President that Gerdez was the Craft Foreman and Papesh was the Assistant Craft Foreman.

second shift. (Chellino 56.1 Resp. ¶ 36.) Rankovich subsequently learned that Aimone had been appointed to the position, while Metesh had been sent to another Chellino job site. (Chellino 56.1 Resp. ¶ 37.) When he wrote to Greg Chellino to inquire about the assignments, Greg Chellino responded that he and Rankovich had agreed that Aimone would be named as the second-shift Refinery Craft Foreman. (Chellino 56.1 Resp. ¶ 37.)

**V. The IBA Grievances Brought by Local 150 Against Chellino**

Following the first set of unilateral appointments, Local 150 filed IBA grievance Nos. 08-46 and 08-47 against Chellino on March 20, 2008. (Chellino 56.1 Resp. ¶¶ 42-43.) A second-stage grievance meeting between the parties on April 29, 2008 was unsuccessful, and a JGC quorum met on May 14, 2008 to hear the grievances. (Chellino 56.1 Resp. ¶¶ 44-45.) Sweeney and Greg Chellino appeared and presented evidence and arguments, but Greg Chellino departed before the announcement of the JGC's decision. (Chellino 56.1 Resp. ¶¶ 45-46.) The JGC, by majority vote, awarded Local 150 the sum of $32,335.20 in grievance 08-46, and $32,467.20 in grievance 08-47. (Chellino 56.1 Resp. ¶ 47.) Chellino was advised of the JGC awards by letters dated May 15, 2008, May 27, 2008, June 17, 2008 and September 19, 2008, but has not paid the awards. (Chellino 56.1 Resp. ¶ 48.)

On June 3, 2008, Local 150 filed an additional two IBA grievances, No. 08-54 and No. 08-55, against Chellino for damages arising from Chellino's continued refusal to appoint mutually-agreed upon Craft Foremen and Assistant Craft Foremen. (Chellino 56.1 Resp. ¶¶ 49-50.) After attempts at resolution against failed, a quorum of the JGC convened to hear the grievances on July 16, 2008. (Chellino 56.1 Resp. ¶¶ 51-52.) Chellino's attorney appeared by telephone at the hearing. (Chellino 56.1 Resp. ¶ 52.) The JGC then awarded Local 150 the sum of $68,181.56 in Grievance

No. 08-54 and $61,436.76 in Grievance No. 08-55. (Chellino 56.1 Resp. ¶ 53.) Chellino was advised of these awards by letters dated July 17, 2008, September 2, 2008, and September 17, 2008, but has not paid the awards. (Chellino 56.1 Resp. ¶ 54.)

On June 30, 2008, Local 150 filed IBA grievance No. 08-64 against Chellino. (Chellino 56.1 Resp. ¶ 57.) Once again, the grievance reached the JGC stage, and the JGC convened on May 13, 2009 to hear the grievance. (Chellino 56.1 Resp. ¶¶ 58-59.) Both parties appeared in person. (Chellino 56.1 Resp. ¶ 59.) The JGC awarded Local 150 $172,062.80 in lost wages and benefits. (Chellino 56.1 Resp. ¶ 59.) Chellino was notified of the award by letters dated May 18, 2009, June 24, 2009 and July 16, 2009 but has not paid it. (Chellino 56.1 Resp. ¶ 60.)

Local 150 filed its fourth set of grievances, No. 09-17 and No. 09-18, against Chellino on February 4, 2009. (Chellino 56.1 Resp. ¶ 63.) The JGC heard these grievances on May 13, 2009, with both parties appearing in person, and awarded Local 150 $218,716.96 80 in lost wages and benefits on grievance No. 09-17, and awarded Local 150 $219,601.76 in lost wages and benefits in grievance No. 09-18. (Chellino 56.1 Resp. ¶¶ 64-65.) Chellino was advised of the awards by letters dated May 18, 2009, June 24, 2009 and July 16, 2009 but has not paid them. (Chellino 56.1 Resp. ¶ 66.)

Chellino contends that the JGC awards were entered without authority or jurisdiction, which Local 150 disputes. (Local 150 56.1 Resp. ¶ 31.)

**VI. The NMA Grievances Brought by Chellino against Local 150**

Chellino filed a grievance under the NMA against Local 150 on July 22, 2008. (Chellino 56.1 Resp. ¶ 68.) The NMAPC sustained the grievance in an award dated September 4, 2008. (Chellino 56.1 Resp. ¶ 69.) On October 7, 2008, Chellino filed a subsequent grievance seeking a

8

determination that it had the right to hire Craft Foremen and Assistant Craft Foremen pursuant to Article 13 of the NMA. (Chellino 56.1 Resp. ¶ 73; Local 150 56.1 Resp. ¶ 32.) The Grievance Review Subcommittee of the NMAPC convened on March 12, 2009. (Local 150 56.1 Resp. ¶ 33.) Subsequently, the NMAPC issued an award in Chellino's favor on March 18, 2009, stating that the union had acted improperly in refusing to allow Chellino "to appoint the foreman and/or general foreman" and in contesting the NMAPC's jurisdiction. (Chellino 56.1 Resp. ¶ 74.) It does not appear that any monetary sanction was associated with the NMAPC decision.

## STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ.P 56(c). When determining if a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("'Rule 56 demands something more specific than the bald assertion of the general truth of a particular

matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'"). On cross-motions for summary judgment, each movant must satisfy Federal Rule of Civil Procedure 56's requirements. *See Cont'l Cos. Co. v. Nw. Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005).

## ANALYSIS

**I. Local 150's Motion for Summary Judgment of Chellino's Claim to Vacate JGC Awards 08-46, 08-47, 08-54, and 08-55 as Untimely**

Local 150 moves for summary judgment in its favor of Chellino's Counterclaim as untimely, on the grounds that the claim to vacate the awards was not filed within ninety days from the date of entry of the awards. The Counterclaim was filed on June 11, 2009 and amended on September 14, 2009. JGC awards 08-46 and 08-47 were entered on May 14, 2008; awards 08-54 and 08-55 were entered on July 17, 2008.

Challenges to labor arbitration awards brought in Illinois must be brought within the 90-day statute of limitations established by the Illinois Arbitration Act. *See Plumbers' Pension Fund, Local 130, v. Domas Mech. Contractors*, 778 F.2d 1266, 1268 (7th Cir. 1987). "[F]ailure to challenge an arbitration award within the applicable limitations period renders the award final." *Int'l Union of Operating Eng'rs, Local 150 v. Centor Contractors, Inc.*, 831 F.2d 1309, 1311 (7th Cir. 1987). Thus, claims to vacate awards, even those that challenge the jurisdiction of the arbitrator who entered the award, "are waived if not brought within the 90-day limitations period." *Int'l Union of Operating Eng'rs, Local 150 v. Rabine*, 161 F.3d 427, 431 (7th Cir. 1998).

Chellino's Counterclaim was brought thirteen months after the entry of awards 08-46 and 08-47 and eleven months after the entry of awards 08-54 and 08-55. Chellino makes no argument that

its claim to vacate these awards should be entertained notwithstanding its failure to challenge them within the 90-day limitations period, but only argues that they are invalid because the JGC lacked jurisdiction to enter them. Jurisdictional challenges are waived if not timely brought, however. *See id.* Thus, and in the absence of any substantive argument from Chellino to the contrary, the Court finds that the Counterclaim seeking to vacate JGC awards 08-46, 08-47, 08-54, and 08-55 was untimely brought, and grants Local 150's Motion for Summary Judgment.

## II. The Remaining JGC and NMAPC Arbitration Awards

As the Supreme Court has long recognized, national policy favors the resolution of labor disputes through arbitration. *See generally United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 1960); *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960). When "[c]ollective-bargaining agreements . . . provide grievance procedures to settle disputes between union and employer with respect to the interpretation and application of the agreement and require binding arbitration for unsettled grievances," federal "courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987). Thus, judicial review of arbitration awards under collective bargaining agreements is extremely limited; an "arbitrator's award in enforceable so long as it 'draws its essence from the collective bargaining agreement'" between the parties. *Ethyl Corp. v. United Steelworkers of Am.*, 768 F.2d 180, 183 (7th Cir. 1985).

Grievance awards may not be enforced where the award is issued by an arbitrator who does not have jurisdiction to hear the grievance at issue. *See Misco*, 484 U.S. at 38 (courts may not overturn decisions of arbitrator who is "acting within the scope of his authority"). Chellino's

position is that the JGC did not have jurisdiction over Local 150's complaints regarding the appointment of Craft Foremen and Assistant Craft Foremen at the Refinery, because work at the Refinery was to be performed exclusively under the terms of the NMA. If the IBA did apply to the dispute at issue here, however, the JGC's awards would be enforceable, because Chellino presents no argument that the JGC based its awards "on some body of thought, or feeling, or policy, or law that is outside the contract" such that they would be unenforceable under the extremely limited scope of review described above. *Ethyl Corp.*, 768 F.2d at 184-85.

Similarly, Local 150's position is that the NMAPC did not have jurisdiction to enter its September 4, 2008 and March 18, 2009 grievance awards, because the NMA did not apply to the appointment of Craft Foremen and Assistant Craft Foremen at the Refinery. Local 150 does not argue that the grievance awards would be unenforceable for any reason other than the jurisdictional dispute. Thus, if the Court finds that the NMAPC had jurisdiction to enter the awards, it appears that there is no dispute that they would be otherwise enforceable.

The Court must therefore determine which grievance committee had proper jurisdiction to entertain the dispute between the parties concerning the appointment of Craft Foremen and Assistant Craft Foremen at the Refinery.

### III. The JGC's Jurisdiction

The JGC had jurisdiction to hear the dispute between Chellino and Local 150, and to enter its grievance awards, if the NMA—which undisputedly controlled the work to be performed at the Refinery—incorporated by adoption relevant provisions of the IBA. Although Chellino argues that the JGC would not have had jurisdiction even if the IBA applied to the Craft Foremen and Assistant Craft Foremen dispute, if the hiring provision of the IBA applies, then only the JGC—the only

grievance hearing body created by the collective bargaining process which resulted in the IBA—would have had jurisdiction to determine the meaning and applicability of that hiring provision. *See, e.g., M.J. Electric, Inc. v. Int'l Union of Operating Eng'rs, Local 150*, No. 02 C 6541, 2003 WL 21640474, at *3 (N.D. Ill. July 10, 2003) (Holderman, J.).

### A. Article XIX of the NMA Adopts the "Hiring Procedure Existing in the Territory" for Craftworkers

The parties do not dispute that the NMA generally governs the work that Chellino performs at the Joliet Refinery. It is further undisputed that the NMA is a "stand-alone" agreement and that the provisions of local collective bargaining agreements do not apply to work performed under the aegis of the NMA except insofar as provisions of those local agreements may be specifically incorporated into the NMA. The dispute between the parties here turns upon the interpretation of two provisions of the NMA: one which states that the designation of foremen and general foremen is the employer's sole responsibility, and one which states that craftworkers in a particular territory are to be hired in accordance with the local hiring procedures of that territory. If the first provision applies to Craft Foremen and Assistant Craft Foremen, then the selection of those personnel would have been Chellino's sole responsibility. If, however, Craft Foremen and Assistant Craft Foremen are "craftworkers" to be hired according to the rules of the particular territory in which they work, then the IBA's provisions, establishing those rules, would require joint selection of Craft Foremen and Assistant Craft Foremen.

#### 1. The NMA's Explicit Terms Address Only the Hiring of Supervisors, Not Craft Foremen

Article XIII of the NMA, entitled "Supervision" reads: "The designation, appointment, and determination of the number of foremen and/or general foremen is the sole responsibility of the

13

Employer." The National Labor Relations Act states that supervisory foremen are individuals with "authority in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees" in a manner that "requires the use of independent judgment." 29 U.S.C. § 152(11). The terms Craft Foremen and Assistant Craft Foremen, in the sense that those terms are used by the parties here, are not mentioned in the NMA and no provisions are made for their hiring. In contrast, the IBA hiring procedure that establishes the procedures for selecting Craft Foremen and Assistant Craft Foremen specifically provides that such foremen are not "supervisors within the meaning of the National Labor Relations Act." Instead, the Craft Foremen and Assistant Craft Foremen have specific craft-oversight duties as set forth in the IBA.

### 2. The Course of Conduct Between the Parties Supports the Conclusion that Craft Foremen and Assistant Craft Foremen are Hired Pursuant to the IBA and Not the NMA

The question is therefore whether "foremen and/or general foremen" as the term is used in the NMA are only those individuals with supervisory powers—a logical conclusion given the focus on "supervision" in Article XIII of the NMA—or whether the term is sufficiently broad to encompass non-supervisory foremen, that is, the Craft Foremen and Assistant Craft Foremen designated by the IBA. Because the NMA does not clearly answer this question, the collective-bargaining contract is ambiguous with respect to the scope of the term "foremen and/or general foremen," and the Court may refer to extrinsic evidence, including evidence of the parties' conduct, to assist in interpretation of the NMA. *See, e.g., United Mine Workers v. Brushy Creek Coal Co.*, 505 F.3d 764, 768 (7th Cir. 2007) ("conduct in the performance stage of a contract can cast light on the parties' understanding of what the contract required").

The conduct of the parties here reflects a mutual understanding that "foremen," who were to be hired according to the terms of the NMA, meant individuals with supervisory powers only, and that Craft Foremen and Assistant Craft Foremen, whose hiring was only required by the IBA and not by any terms of the NMA, were hired according to the requirements of the IBA. First, it is undisputed that Chellino hired Charlie Novak as such a general foreman for the Refinery project in September of 2007, that Novak had supervisory powers over Chellino's employees including the Craft Foremen and Assistant Craft Foremen, and that Local 150 did not object to the unilateral selection of Novak as a supervisory foreman. Second, it is undisputed that Chellino hired Craft Foremen and Assistant Craft Foremen at the Refinery when required by both the 2001-2007 and 2007-2010 IBAs—a Craft Foreman was hired once there were eight or more craftworkers on a shift, and Assistant Craft Foremen were hired when twenty workers were present on a shift. That numbers-based trigger complied with the IBA, and was not mandated by the NMA.

Moreover, hiring of Craft Foremen and Assistant Craft Foremen prior to 2007 was done in accordance with the terms of the 2001-2007 IBA, which allowed for unilateral appointment of Craft Foremen and Assistant Craft Foremen who had worked for Chellino for more than ten years. And even post-2007 hiring of Craft Foremen and Assistant Craft Foremen was done in a manner that reflected the parties' understanding that the IBA applied—the parties mutually agreed upon three appointments, and at one point when Local 150 protested Chellino's unilateral appointment of another individual to the Craft Foremen position, Chellino responded not that the IBA's mutual-selection requirement did not apply, but that a mutual agreement had been reached. Finally, the undisputed facts that at least three Craft Foremen and Assistant Craft Foremen were paid according to IBA pay scales, and that they were expected to fulfill duties defined by the IBA, further supports

the conclusion that the parties defined the positions of Craft Foremen and Assistant Craft Foremen be reference to the IBA's specific provisions governing those positions, and not by reference to the NMA's general provision governing "foremen." Thus, the Court finds that the term "foremen" as used in the NMA does not encompass the specific positions of Craft Foremen and Assistant Craft Foremen, positions which are created by the terms of the IBA.

### B. Chellino's Conduct Reflected an Intent to Be Bound by the Terms of the IBA with Respect to the Hiring of Craft Foremen and Assistant Craft Foremen

Finally, even if the course of conduct described above is not sufficient to demonstrate the parties' understanding that the IBA, and not the NMA, governed the selection of Craft Foremen and Assistant Craft Foremen at the Refinery project, it is sufficient to show Chellino's intent to be bound by the IBA in that respect. A party may be bound by the terms of a collective bargaining agreement where there "is conduct manifesting an intention to abide and be bound by the terms of an agreement." *Gariup v. Birchler Ceiling & Interior Co.*, 777 F.2d 370, 373 (7th Cir. 1985). Chellino's assent here was manifested by its compliance with the Craft Foremen and Assistant Craft Foremen hiring provisions of the 2001-2007 IBA, by its partial compliance with the 2007-2010 IBA, and by all of the particular actions described in greater detail above. Because Chellino's conduct here indicated an intent to be bound by the IBA with respect to the Craft Foremen and Assistant Craft Foremen positions even if the NMA otherwise would have applied, the Court finds this manifested assent to the applicability of the IBA in this context an alternative ground for holding that the IBA's terms, and grievance procedures, were understood and meant by the parties to apply to those positions.

**C. The JGC Had Jurisdiction to Hear the Dispute Regarding Appointment of Craft Foremen and Assistant Craft Foremen at the Refinery; The Seven JGC Awards are Thus Enforceable**

Because the terms of the IBA applied to the selection and appointment of Craft Foremen and Assistant Craft Foremen at the Refinery, the JGC had jurisdiction to hear disputes and enter grievance awards arising from such appointments pursuant to the undisputed terms of the IBA. Chellino was present, either personally or through a telephonic appearance of its counsel, at each of the grievance hearings, and was timely and repeatedly notified of each of the awards. Moreover, Chellino does not assert that the awards entered by the JGC were procedurally or substantively improper, only that the JGC lacked jurisdiction to enter them. Because the Court holds that the JGC did have jurisdiction, Local 150's Motion for Summary Judgment of enforceability is granted as to the remaining three grievance awards, Nos. 08-64, 09-17, and 09-18 (Chellino's challenge to the other four awards, as already explained, was untimely filed). Chellino's Motion for Summary Judgment seeking to vacate all seven awards is denied.

### III. The NMAPC's Jurisdiction

Local 150's Complaint also seeks to vacate an award entered by the NMAPC on March 18, 2009, in which the NMAPC stated that Local 150 had erred in refusing to allow Chellino to unilaterally appoint "the foreman and/or general foreman." Chellino's Counterclaim seeks a declaration of the enforceability of that award.

The parties' arguments with respect to the NMAPC award are essentially the same, but reversed, as those already discussed with respect to the JGC award. Local 150 argues that the NMAPC had no jurisdiction to enter the award because the IBA, and not the NMA, applied to the hiring of Craft Foremen and Assistant Craft Foremen at the Refinery. Chellino argues that only the

17

NMA applies to work at the Refinery, and that the NMA did not implicitly adopt the provisions of the IBA regarding Craft Foremen and Assistant Craft Foremen by its reference to the hiring procedures of the territory in which work under the NMA is performed. The Court has already addressed these arguments at length, and need not do so again. In summary, the IBA applies to the hiring of Craft Foremen and Assistant Craft Foremen both because the ambiguous language of the NMA, when supplemented by the extrinsic evidence of the parties' conduct, reflects that Craft Foremen and Assistant Craft Foremen are not "foremen" within the NMA's meaning and because Chellino's conduct reflected an intent to be bound by the terms of the IBA with respect to hiring for those two positions. Thus, the NMAPC erred in finding that Local 150 had undermined Chellino's authority to unilaterally appoint a supervisory foreman—Chellino did so and Local 150 raised no objection.

The parties agree that "where an award is issued pursuant to an inapplicable agreement, the award is unenforceable inasmuch as it is not based upon a proper agreement to arbitrate." (R. 97, Def. Reply Memo. at 5 (citing *Local 675 United Ass'n of Journeymen & Apprentice Plumbers & Pipefitters v. Honeywell, Inc.*, 65 F.2d 1361, 1364 (9th Cir. 1981)). Indeed, federal enforceability of collective bargaining-related grievance awards is predicated upon the entrance of such awards by the appropriate grievance-hearing bodies on the basis of an enforceable collective-bargaining agreement between the parties. *See Ethyl Corp.*, 768 F.2d at 184-85. Because the NMAPC did not have jurisdiction to hear grievances arising from the parties' dispute over the appointment of Craft Foremen and Assistant Craft Foremen, positions created and governed by the IBA and not the NMA, the 2009 NMAPC in Chellino's favor was invalid and unenforceable.

Local 150's Motion for Summary Judgment of unenforceability of the NMAPC award is therefore granted. Chellino's Motion for Summary Judgment seeking to enforce the NMAPC award is denied.

## CONCLUSION AND ORDER

Local 150's Motion for Summary Judgment as to Chellino's challenge to JGC awards 08-46, 08-54, and 08-55 is granted. Local 150's Motion for Summary Judgment as to JGC awards 08-64, 09-17, and 09-18 is granted. The Court holds that the JGC had jurisdiction to enter all seven awards and that they are otherwise enforceable; Chellino's Motion for Summary Judgment as to the JGC awards is therefore denied. Local 150's Motion for Summary Judgment of unenforceability of the NMAPC award is granted; Chellino's Motion for Summary Judgment seeking to enforce the NMAPC award is denied.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: September 20, 2010